UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 15-CR-105 (SRN/LIB) |
| v. | MEMORANDUM OPINION AND ORDER |
| Daniel Miguel Rush, | |
| Defendant. | |

Thomas M. Hollenhorst, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff

Kevin C. Cornwell, Law Office of Kevin C. Cornwell, 102 South 29th Avenue West, Suite 206, Duluth, Minnesota 55806, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Leo I. Brisbois dated June 8, 2015 [Doc. No. 23]. In the R&R, Magistrate Judge Brisbois recommends that this Court deny Defendant's Motion for Suppression of Evidence [Doc. No. 18]. Defendant filed objections to the R&R [Doc. No. 25], and subsequently filed amended objections, based on revised language in Minn. R. Crim. P. 6.01 [Doc. No. 26]. The Government filed a response to Defendant's amended objections [Doc. No. 27]. The Court has reviewed de novo those portions of the R&R to which the parties object, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(3). Based on that review, the Court adopts in part, and declines to adopt in part,

1

the magistrate judge's R&R, and denies the Motion to Suppress.

## I. BACKGROUND

Defendant was charged by indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 924(g)(1) and 924(a)(2). The factual background of this case is set forth in the R&R, which the Court incorporates herein by reference. Briefly, on January 30, 2015, the Duluth Police Department executed a search warrant at a Duluth apartment. (R&R at 2 [Doc. No. 23].) Prior to the execution of the warrant, law enforcement officers learned of narcotics sales (some of which were the subject of controlled buys) at the apartment and learned that during those sales, firearms were in plain view. (Id.) A tactical response team executed the warrant, during which time they observed Defendant on a mattress in the apartment's living room. (Id. at 3.) The tactical response team encountered fourteen persons in the apartment, as well as various firearms and hypodermic needles in plain view. (Id.) Officers discovered a sawed-off shotgun on a mattress occupied by Defendant. (Id.)

Because of the number of persons inside the residence and the presence of firearms and contraband, the officers executing the warrant removed the fourteen persons from the apartment. (Id.) Duluth Police Officer Jason Eikam, who testified for the Government at the hearing on the instant motion, conducted pat searches of the persons removed from

the apartment. (Id.) Officer Eikam testified that he performed the pat searches because the investigation, in which he had participated, had produced general information that weapons were in the apartment and because he had overheard comments from the tactical response team members, during the execution of the warrant, about the presence of firearms in the apartment. (Id.) Officer Eikam was previously acquainted with Defendant and knew him to be a convicted felon, prohibited under federal law from possessing firearms or ammunition. (Id. at 4.) While Officer Eikam was generally aware that weapons had been found inside the apartment, he was not specifically aware that Defendant had been found on a mattress on which there was a gun, nor did he possess any other specific information to indicate that Defendant possessed a weapon on his person. (Id.)

Once Defendant was removed from the apartment, Officer Eikam asked him if he had any weapons on his person. (Id.) Officer Eikam testified that he asked this question because he knew of the general presence of firearms and narcotics inside the apartment and was concerned about the safety of law enforcement officers. (Id.) Defendant responded that he had some hypodermic needles and possibly a pipe in his pockets. (Id. at 4-5.) Officer Eikam then asked if the needles had been capped, to which Defendant responded that he did not know. (Id. at 5.) Officer Eikam was concerned that an uncapped needle could injure the officers or Defendant himself. (Id.)

Officer Eikam patted down the outside of Defendant's right front pants pocket,

3

feeling an object that he suspected was a hypodermic needle. (Id.) Because of the orientation of the object, he felt that he could remove it without risk of injury, and did so. (Id.) The object was, in fact, a hypodermic needle. (Id.) In the course of removing the needle, Officer Eikam felt a second object in the same pocket, but was unsure whether it was another hypodermic needle or a pipe. (Id.) He reached in to remove the object, at which point he determined that it was a shotgun shell. (Id.) Officer Eikam replaced the shell in Defendant's pocket, and then checked Defendant's left front pants pocket. In that pocket, he found and removed a second hypodermic needle as well as a glass pipe. (Id.)

After the pat-down search, Defendant was eventually transported to the Duluth Police Department. (Id.) Pursuant to an inventory search, the shotgun shell was removed and recorded. (Id.)

In his Motion to Suppress Evidence, Defendant moves to suppress all evidence obtained from the warrantless search of his person, arguing that the search exceeded the scope and purpose permitted by Terry v. Ohio, 392 U.S. 1 (1968), in violation of the Fourth Amendment. (Mot. for Supp. of Evid. [Doc. No. 18].) The Government argues that the search was lawful under Terry for purposes of officer safety, or, alternatively, as a search incident to arrest. (R&R at 9 [Doc. No. 23].)

In the R&R, Magistrate Judge Brisbois first found that Defendant was properly detained during the execution of the search warrant. (Id. at 9.) The magistrate judge next found that the pat-down search of Defendant to remove the needles was lawful under

4

Terry for purposes of officer safety. (Id. at 10.) However, the magistrate judge found that Officer Eikam exceeded the scope of Terry by removing the shotgun shell from Defendant's pocket "[b]ecause the character of the shotgun shell was not immediately apparently to Officer Eikam. . . ." (Id.) (emphasis in original).

Regarding the Government's alternative argument that the search of Defendant's pockets was conducted incident to a lawful arrest – and therefore the evidence obtained was admissible – the magistrate judge found that while the officers did not inform Defendant that he was placed under arrest, he was subject to *de facto* arrest. (Id. at 11-12.) As to whether probable cause existed for *de facto* arrest, Magistrate Judge Brisbois found that evidence of the sawed-off shotgun at the time of Officer Eikam's search of Defendant's person was insufficient to create probable cause. (Id. at 14.) However, the magistrate judge found that probable cause existed for arrest based on Defendant's possession of hypodermic needles, which is a misdemeanor under Minn. Stat. § 151.40, Subd. 1.[1] (Id. at 14-15.) Accordingly, the magistrate judge found that Officer Eikam had probable cause to arrest Defendant and that the search of his pockets was lawful as a search incident to a *de facto* arrest. (Id. at 15.)

In his Objections, Defendant contends that because Minn. R. Crim. P. 6.01, Subd. 1(a) classifies the possession of hypodermic needles as a misdemeanor offense, for which arrest is not generally warranted subject to certain exceptions, there could be no valid *de*

---

[1] The statute contains certain exceptions, none of which are applicable here.

*facto* arrest. (Def.'s Am. Objections at 1-2 [Doc. No. 26].) Defendant therefore argues that Officer Eikam's search of Defendant's pockets cannot be considered a search incident to an arrest. (Id.)

The Government opposes Defendant's Objections, arguing that Defendant misreads Minn. R. Crim. P. 6.01, and that, in any event, the legality of the pat-down search is determined by analysis under the Fourth Amendment, not state law. (Gov't's Resp. at 4 [Doc. No. 27].) The Government argues that Officer Eikam's search was a valid search incident to arrest under the Fourth Amendment. (Id.) Alternatively, the Government contends the search was valid as a Terry frisk for weapons and that the magistrate judge incorrectly found that the search exceeded the scope of Terry. (Id. at 5.) The Government therefore asserts that Defendant's motion to suppress should be denied, arguing that the search was valid under Terry or, alternatively, as a search incident to arrest.

## II. DISCUSSION

### A. Search Incident to Arrest

A search incident to a lawful arrest constitutes a traditional exception to the Fourth Amendment's warrant requirement. United States v. Robinson, 414 U.S. 218, 224 (1973). The Court agrees with the magistrate judge's finding that the continued seizure of Defendant in order to transport him to the police station amounted to a *de facto* arrest. Dunaway v. New York, 442 U.S. 200, 212 (1979) (holding that the detention and transportation of a suspect to the police station for questioning amounted to a *de facto*

arrest). The Eighth Circuit has held that the search incident to arrest exception to the warrant requirement applies to *de facto* arrests. United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004). The arrest underpinning a warrantless search incident to arrest must be supported by probable cause. Henry v. United States, 361 U.S. 98, 102 (1959). "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004). The Court finds that the magistrate judge properly found that the police had probable cause to arrest Defendant after he informed Officer Eikam that he had hypodermic needles on his person, in violation of Minn. Stat. § 151.40, Subd. 1.

Defendant correctly identifies the prohibition against possession of hypodermic needles as a misdemeanor, Minn. Stat. § 151.29, and properly notes that Minn. R. Crim. P. 6.01 bars arrest for the commission of a misdemeanor, subject to certain exceptions, none of which are applicable here. He then argues that because Officer Eikam was only authorized to issue a citation for the possession of hypodermic needles, the search incident to arrest was unlawful, as it was based on an unlawful arrest. The Court disagrees. Even assuming that Minn. R. Crim. P. 6.01 curtails the right of law enforcement to arrest a person for a misdemeanor, "[w]hen evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to a state statute, but rather is resolved by [F]ourth

7

[A]mendment analysis." United States v. Kelley, 652 F.3d 915, 917 (8th Cir. 2011) (citations omitted). In fact, in United States v. Lewis, 183 F.3d 791, 793-94 (8th Cir. 1999), the Eighth Circuit addressed the very argument asserted by Defendant in his Objections. The defendant in Lewis contended that because Minn. R. Crim. P. 6.01 generally prohibits custodial arrests for misdemeanors, Lewis's arrest for a misdemeanor, and the search incident to his arrest, were unlawful. Id. The Eighth Circuit rejected this argument, finding that "the appropriate inquiry here is not whether Lewis's arrest was valid under Minnesota's criminal procedure statute, but rather under federal law." Id. at 794. Under federal law, the court concluded that the officers were permitted to arrest the defendant and that the search conducted incident to that arrest was therefore valid. Id.

Here, the possession of the hypodermic needles was an offense committed in Officer Eikam's presence and Defendant admitted to the possession of the needles. As noted in Lewis, it is a "well-established principle of the common law that a police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence." Id. (citing United States v. Watson, 423 U.S. 411, 418 (1976)). Moreover, Minnesota law specifically permits a peace officer to arrest a person for violation of a misdemeanor when the offense is committed or attempted in the officer's presence. See Minn. Stat. § 629.34, Subd. 1(c)(1). The fact of a lawful arrest establishes an officer's ability to conduct a search incident to the arrest. Lewis, 183 F.3d at 794 (citing Robinson, 414 U.S. at 235). The arrest here was a lawful *de facto* arrest. Accordingly, the magistrate judge correctly found that the search of Defendant's pockets was proper as a

8

search conducted incident to a lawful *de facto* arrest.

**B.     Terry Pat-Down Search**

The magistrate judge also correctly found that the initial seizure of Defendant was proper under Michigan v. Summers, 452 U.S. 692, 704 (1981), which permits officers executing a search warrant to detain occupants of the premises to be searched while the search is conducted. See also Muehler v. Mena, 544 U.S. 93, 98 (2005) (noting that the detention of occupants during the execution of a search warrant is appropriate, because the character of the additional intrusion is slight, and the justifications for detention are substantial). The Court likewise agrees with the finding of Magistrate Judge Brisbois that the pat-down search of Defendant to remove the hypodermic needles was proper under Terry. While the Fourth Amendment protects against unreasonable searches and seizures, under Terry, a brief seizure and limited search for weapons is permitted if the officer has a reasonable, articulable suspicion that the person in question is armed and dangerous. Terry, 392 U.S. at 21-22. The Court agrees with the magistrate judge that Officer Eikam was legally justified in patting down Defendant for hypodermic needles. Defendant had indicated that he had needles in his pockets and did not know whether they were capped or uncapped. The limited pat-down search for needles was permissible under Terry to ensure officer safety, since the hypodermic needles could easily be used as weapons. Defendant does not challenge these findings.

As to the magistrate judge's finding that Officer Eikam exceeded the scope of the Terry search by removing the shotgun shell from Defendant's right pocket, the Court

respectfully disagrees, and declines to adopt the portion of the R&R that addresses this issue. Magistrate Judge Brisbois found that the removal of the shotgun shell was improper because the identity of the object was not immediately apparent to Officer Eikam. (R&R at 10 [Doc. No. 23]) (citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).) In Dickerson, the Supreme Court found that an officer's search of the defendant's jacket exceeded the scope of Terry because the officer continued to explore the defendant's jacket, even after concluding that it contained no weapons, but rather, a lump of crack cocaine. 508 U.S. at 378. However, where an officer has reason to believe that weapons may still be present, the officer may seize contraband detected during the lawful execution of a Terry search. Id. at 374-78 (citing Michigan v. Long, 463 U.S. 1032,1049-50 (1983)). Applying the principles of Dickerson, the Eighth Circuit has found that a pat search for weapons that revealed a vial of methamphetamine was within the bounds of Terry because the officer conducting the search "never concluded that weapons were not present. Instead, he testified that he was specifically concerned that the admittedly small object in [the defendant's] coin pocket could have been a pocketknife or some other type of weapon." Hanlon, 401 F.3d at 929.

The same is true here. Officer Eikam testified that after removing the first hypodermic needle from Defendant's right pocket, he felt another object in the same pocket, but was not sure whether it was a pipe or another hypodermic needle. (R&R at 5 [Doc. No. 23].) He testified to his concern that Defendant might use an uncapped needle to injure the officers, himself, or others. (Id. at 10.) Defendant had informed Officer

10

Eikam that he had hypodermic needles – more than one – in his pockets, which were possibly uncapped. (Id. at 4.) Officer Eikam need not have absolutely concluded that the second object in Defendant's right pocket was an uncapped hypodermic needle in order for the search to stay within the bounds of Terry. Defendant himself admitted to having more than one needle on his person and Officer Eikam "never concluded that weapons were not present," Hanlon, 401 F.3d at 929, when he felt the second object in Defendant's right pocket. Accordingly, Court finds that the search and seizure was valid under Terry. Under either theory, Defendant's Motion to Suppress must be denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Suppress Evidence [Doc. No. 18] is **DENIED**;

2. Defendant's Objections to the R&R [Doc. Nos. 25 & 26] are **OVERRULED**; and

3. The Court **ADOPTS in part**, and **DECLINES TO ADOPT in part**, the Report & Recommendation [Doc. No. 23].

Dated: July 13, 2015

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge